# Illinois Official Reports

## Appellate Court

---

### *Bozek v. Erie Insurance Group*, 2015 IL App (2d) 150155

---

| | |
|---|---|
| Appellate Court Caption | MAREK BOZEK and BOZENA BOZEK, Plaintiffs-Appellants, v. ERIE INSURANCE GROUP, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-15-0155 |
| Filed | December 17, 2015 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 14-MR-396; the Hon. Thomas A. Meyer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Bradford S. Stewart, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellants.<br><br>Bruce M. Lichtcsien, of Hinkhouse Williams Walsh LLP, of Chicago, for appellee. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices McLaren and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following cross-motions for summary judgment concerning coverage for damage to an in-ground swimming pool, the trial court granted judgment to defendant, Erie Insurance Group. The court found that, as a matter of law, the insurance policy's anticoncurrent-causation clause operated to preclude coverage because two events, one covered under the policy (a failed pressure-relief valve) and one excluded under the policy (hydrostatic pressure), contributed to a single loss (the lifting of the pool out of the ground). The anticoncurrent-causation clause read: "We do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence, to the loss."

¶ 2    In the trial court (as on appeal), the plaintiffs, Marek and Bozena Bozek, argued that the anticoncurrent-causation clause does not apply to the underlying facts. They posited that a reasonable definition of "in sequence" is "subsequent to." Therefore, the anticoncurrent-causation clause would mean that, if a covered cause happened *subsequent to* the excluded cause, there would be no coverage. Here, according to the Bozeks, the covered cause, the failure of the pressure-relief valve, happened *prior to* the excluded cause, the hydrostatic pressure. As such, in the Bozeks' view, the anticoncurrent-causation clause did not apply.

¶ 3    The trial court rejected the Bozeks' interpretation of "in sequence" and its function in the anticoncurrent-causation clause. We interpret the anticoncurrent-causation clause *de novo*, and we determine that, while the trial court reached the correct result, given the underlying facts, it focused on the wrong portion of the clause. In this fact pattern, the two causes at issue, the failed valve and the hydrostatic pressure, "contributed concurrently" to the loss. The failed valve and the hydrostatic pressure did not "contribute[ ] *** in sequence" to the loss, as put forth by the Bozeks. We do not look to the point in time that each cause *came into existence*. We look to the point in time that it *contributed* to the loss. The term "concurrently" contains no ambiguity, and, as each cause contributed concurrently, the anticoncurrent-causation clause precludes coverage for the loss.

¶ 4    Alternatively, the Bozeks hint that, even if the anticoncurrent-causation clause must be read to preclude coverage, we should find anticoncurrent-causation clauses to be against public policy. The Bozeks have not sufficiently briefed that question, and, so, we leave its resolution to a future court. We affirm.

## I. BACKGROUND

¶ 6    Following a rain storm, the Bozeks incurred damage to their in-ground swimming pool. The Bozeks had a homeowner's insurance policy with Erie, which provided $89,000 in coverage for damage to the pool. The Bozeks reported the loss to Erie. Erie sent a company, Engineering Systems, Inc. (ESI), to investigate the loss.

¶ 7    ESI's report stated:

> "On June 27, 2013[,] the pool at the subject address heaved out of the ground. ESI was retained to determine the cause of the distress in the pool. The following provides a summary of ESI's opinions.

## Weather Conditions

According to unofficial weather records in the location of this property, it rained approximately 3.5 inches in five days prior to the event. This amount is nearly the average (4 inches) for the entire typical month of July. It rained nearly 2.5 inches in the 48 hours before the incident occurred.

## Cause of Distress

The amount of rain that occurred can result in saturated soils that produce significant uplift hydrostatic pressures. The weight of the water in the pool must exceed the uplift forces of the water pressure in the soil for the pool to remain in place. However in the subject incident the pool had been emptied to clean debris making it susceptible to uplift.

In-ground pools are provided with a method to balance uplift in the event of the pool being emptied. Pools utilize pressure relief valves to prevent this uplift. In the event that the pool is empty, the relief valve allows ground water to enter into the pool to counterbalance the uplift of the ground hydrostatic pressure. The water was not clear enough at the time of the site inspection to see if there was a pressure relief valve. However, the owner stated that there was a pressure relief valve.

The pool lifted upward because the ground water pressure pushed the pool upward because the pressure relief did not function properly.

## Damages

The in-ground pool was damaged to the point that it must be replaced in its entirety. The heaving of the pool also damaged the concrete slab around the pool. The concrete slab will also need to be replaced."

¶ 8    Erie denied coverage, stating that cause(s) of distress were excluded under the policy. The relevant portions of the policy stated:

*"We do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence, to the loss*:

\* \* \*

3. by freezing thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, deck, swimming pool, foundation, retaining wall, bulkhead, pier, wharf[,] or dock.

\* \* \*

5. \*\*\* by

\* \* \*

(b) mechanical breakdown, deterioration, wear and tear, marring, inherent vice, latent defect, tree roots, rust, smog, wet or dry rot, mold, fungus or spores;

\* \* \*

9. by water damage, meaning:

\* \* \*

(c) water below the surface on the ground. This includes water which exerts pressure on, or flows seeps or leaks through any part of a building or other structure, including sidewalks, driveways, foundations, pavements, patios, swimming pools or decks." (Emphasis added.)

The emphasized introductory sentence of the exclusion section set forth above is known as an anticoncurrent-causation clause. It is the root of the instant controversy.

¶ 9 The Bozeks filed a complaint for declaratory judgment. They alleged that Erie improperly denied coverage. They conceded that hydrostatic pressure was an excluded cause (under either paragraph 3 or paragraph 9 of the exclusion section). However, they argued that Erie did not establish that the failure of the pressure-relief valve was an excluded cause. Specifically, the Bozeks asserted in subsequent filings that Erie did not establish that the failure of the pressure-relief valve qualified as an excluded "mechanical breakdown" under paragraph 5 of the exclusion section. In the Bozeks' view, the anticoncurrent-causation clause dictated that, because the failure of the pressure-relief valve, a covered event, preceded the increase in hydrostatic pressure, an excluded event, the loss was covered.

¶ 10 In support of their position, the Bozeks pointed to the anticoncurrent-causation clause's use of the phrase, *in sequence*: "We do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or *in sequence*, to the loss." (Emphasis added.) The Bozeks posited that a reasonable definition of "in sequence" is "subsequent to."[1] Therefore, the anticoncurrent-causation clause meant that, if a covered cause (*i.e.*, "other events or happenings") happened *subsequent to* an excluded cause, there would be no coverage. Here, however, the covered cause, the failure of the pressure-relief valve, happened *prior to* the excluded cause, the hydrostatic pressure. As such, the anticoncurrent-causation clause did not apply. The Bozeks then argued that, in the absence of an *applicable* anticoncurrent-causation clause, they could not be divested of coverage for the loss, associated with the covered failure of the pressure-relief valve, simply because an excluded cause later occurred (citing *Corban v. United Services Automobile Ass'n*, 2008-IA-00645-SCT (Miss. 2009), and *Robichaux v. Nationwide Mutual Fire Insurance Co.*, 2010-CA-00109-SCT (Miss. 2011).

¶ 11 The parties filed cross-motions for summary judgment. The Bozeks argued as set forth above. Erie argued that, even if the court were to accept that the failure of the pressure-relief valve was covered under the policy, the anticoncurrent-causation clause precluded coverage. Erie posited that the phrase "in sequence" meant "one after the other." However, because the policy did not specify which cause must come after the other (or which cause must come first), *any* sequence of events involving an excluded cause would preclude coverage. The use of the words "concurrently" and "in sequence" avoids coverage where two events occur at the same time or one after the other. Where an excluded cause is *a* cause, there is no coverage.

¶ 12 Erie cited many cases discussing policies with anticoncurrent-causation clauses. Most relevant was *South Carolina Farm Bureau Mutual Insurance Co. v. Durham*, 671 S.E.2d 610, 613 (S.C. 2009). In *Durham*, the insureds emptied their pool in order to clean it. Within two or

---

[1]The Bozeks quote dictionary definitions of "sequence" to be: "(1) The state of being sequent or following; a following or coming of one thing after another; succession; (2) A particular order of succession or following; an arrangement; order; (3) A continuous or related series of things following in a certain order or succession; [or] (4) Result; consequence; sequel." Webster's Unabridged Dictionary (2d ed. 1983). We see that a definition of "sequence" is the "state of being sequent," which in turn means "1: CONSECUTIVE, SUCCEEDING[; or] 2: CONSEQUENT, RESULTANT." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/sequent (last visited Nov. 17, 2015).

three days, the pool " 'floated' " out above the foundation (*id.* at 611), because, as here, underground hydrostatic pressure pushed against the pool without release or countervailing pressure from inside the pool. The insurance company denied coverage, because the policy did not cover damage due to hydrostatic pressure. The policy also contained an anticoncurrent-causation clause: " 'We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.' " *Id*. at 612.

¶ 13   The *Durham* court affirmed the denial of coverage. *Id*. at 613. It recognized that, *absent* an anticoncurrent-causation clause, an argument could be made that the draining of the pool was the "but for" cause, allowing for coverage despite the additional, excluded cause of hydrostatic pressure. *Id*. However, the court held that the anticoncurrent-causation clause precluded coverage. *Id*. It unambiguously stated that it excluded loss caused by hydrostatic pressure, even if another cause, such as draining the pool, contributed in any sequence to the loss. *Id*. The anticoncurrent-causation clause required that, where an excluded cause was *a* cause, there was no coverage. *Id*.

¶ 14   Erie acknowledged that, unlike the instant policy, the policy in *Durham* prefaced the word "sequence" with the word "any": " 'Such loss is excluded regardless of any other cause or event contributing concurrently or in *any* sequence to the loss.' " (Emphasis added.) *Id*. at 612. Erie contended, however, that the instant policy's lack of the word "any" was a distinction without a difference. The word "any" in *Durham* was superfluous. Like the *Durham* policy's use of the words "concurrently" and "in any sequence," the instant policy's use of the words "concurrently" and "in sequence" avoids coverage where two events occur at the same time or one after the other. Where an excluded cause is *a* cause, there is no coverage.

¶ 15   The trial court granted summary judgment to Erie and denied summary judgment to the Bozeks. It acknowledged that a question of fact remained as to whether the failure of the pressure-relief valve was a covered cause or was excluded as a mechanical failure. However, even if, for the purposes of summary judgment, the court categorized the failure of the pressure-relief valve as a covered cause, the anticoncurrent-causation clause precluded coverage as a matter of law. The court accepted Erie's reading of the policy that any sequence of events involving an excluded clause would preclude coverage. "[T]he only fair reading I could give it was to read it as in *any* sequence." (Emphasis added.) Where an excluded cause is *a* cause, the court found, there is no coverage. Here, there was no question that hydrostatic pressure was an excluded cause. Therefore, there was no coverage. This appeal followed.

¶ 16                          II. ANALYSIS

¶ 17   The Bozeks appeal the trial court's summary judgment rulings. Summary judgment may be granted only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). We review a trial court's summary judgment rulings *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 18   Specifically, the Bozeks raise two issues: (1) whether the failure of the pressure-relief valve is a covered cause and (2) whether the anticoncurrent-causation clause precludes coverage. First, the Bozeks argue that, because Erie did not meet its burden to show that the failure of the pressure-relief valve was an excluded mechanical breakdown, it must be

considered a covered event. Second, they argue that, because the covered event happened first, the anticoncurrent-causation clause does not apply to divest them of coverage. They contend that the court erred in that it essentially inserted an additional word, "any," in interpreting the anticoncurrent-causation clause. The Bozeks need to prevail on both issues in order to establish coverage as a matter of law, whereas Erie need prevail on only one issue to show that coverage should be denied as a matter of law. Because we hold that, even if the failure of the pressure-relief valve is a covered cause, the anticoncurrent-causation clause precludes coverage as a matter of law, we address only that issue.

¶ 19    Our review of the trial court's summary judgment rulings turns on an issue of contract interpretation. Insurance policies are subject to the same rules of construction as other types of contracts. *Nicor, Inc. v. Associated Electric & Gas Insurance Services, Ltd.*, 223 Ill. 2d 407, 416 (2006). A court's primary objective in construing the language of a policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. *Pekin Insurance Co. v. Precision Dose, Inc*., 2012 IL App (2d) 110195, ¶ 31. If the policy terms are clear and unambiguous, they must be given their plain and ordinary meanings. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). An ambiguity exists where the language is obscure in meaning through indefiniteness of expression or where the language is reasonably susceptible to more than one meaning. *Central Illinois Light Co. v. Home Insurance Co*., 213 Ill. 2d 141, 153 (2004). A contract is not rendered ambiguous merely because the parties disagree on its meaning. *Id.* Additionally, we will not strain to find an ambiguity where none exists, nor will we consider an interpretation that is unreasonable or leads to absurd results. *United States Fire Insurance Co. v. Hartford Insurance Co*., 312 Ill. App. 3d 153, 155 (2000).

¶ 20    However, if the language is reasonably susceptible to more than one meaning, it is considered ambiguous and will be construed strictly against the insurer, who drafted the policy. *Koloms*, 177 Ill. 2d at 479. Provisions that limit or exclude coverage are interpreted even more liberally in favor of the insured. *Id*. The test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would understand them to mean. *Insurance Co. of Illinois v. Markogiannakis*, 188 Ill. App. 3d 643, 655 (1989). If an insurer relies on an exclusionary provision, it must be clear and free from doubt that the provision prevents coverage. *Cincinnati Insurance Co. v. American Hardware Manufacturers Ass'n*, 387 Ill. App. 3d 85, 108 (2008). Issues of contract interpretation, including whether a contract is ambiguous, are reviewed *de novo*. See *Central Illinois Light*, 213 Ill. 2d at 153.

¶ 21    We begin by discussing the origin of anticoncurrent-causation clauses. Insurance companies started putting anticoncurrent-causation clauses in their policies in response to concurrent-causation controversies. Concurrent-causation controversies arise where more than one cause contributes to a loss, some of which are covered and some of which are excluded. See, *e.g.*, Peter Nash Swisher, *Causation Requirements in Tort and Insurance Law Practice: Demystifying Some Legal Causation "Riddles"*, 43 Tort Trial & Ins. Prac. L.J. 1, 26 (2007). Many coverage cases have sought to determine, in the absence of specific policy language, exactly how substantial or sufficient a given causal nexus needs to be in order to provide coverage. *Id*. at 31. There are four basic stops on the causal spectrum of insurance coverage: (1) most broadly, but-for or minimally sufficient causation, providing coverage if *a* covered cause contributes to the loss, regardless of its dominance or order in a chain of events; (2) in the middle, efficient or dominant proximate causation, providing coverage "if a risk of loss that is specifically insured against in the insurance policy sets in motion, in an unbroken causal

sequence, the events that cause the ultimate loss, even though the immediate cause in the chain of causation is an excluded cause," or if it is simply the dominant cause; (3) more narrowly, immediate causation, providing coverage only where the covered cause is the last, immediate cause in the chain of causation; and (4) most narrowly, regardless of order, if any excluded cause contributes to the loss, there is no coverage. *Id*. at 22-27 (grouping together categories three and four).

¶ 22        The immediate-cause rule is the traditional insurance rule. *Id*. at 22. However, in practice, the immediate-cause rule can result in claim denials that are contrary to the intent and reasonable expectations of the contracting parties. *Id*. at 24. As such, the majority of jurisdictions now favor the middle-ground, efficient-or-dominant-proximate-cause rule. *Id*. at 23-24. Only a minority of jurisdictions favor the broad, but-for causation rule. See, *e.g.*, *Durham*, 671 S.E.2d at 613. Indeed, it appears that Illinois favors the efficient-or-dominant-proximate-cause rule in the absence of contrary language in the policy. See, *e.g.*, *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1035 (2008) (the court did not apply the "proximate cause" rule where the policy expressly provided coverage for loss "arising out of" the covered cause, thus invoking but-for causation).

¶ 23        Of course, the policy itself may determine the requisite causal nexus. *Id*. Just as policies may specify but-for causation, they may also specify a more conservative causation rule. Swisher, *supra*, at 27. On the extreme of specifying narrow coverage, many policies include anticoncurrent-causation clauses. *Id*. at 27-28. The purpose of anticoncurrent-causation clauses is to avoid application of the general rule that there is coverage so long as the efficient or dominant cause is covered. *Id*. When an anticoncurrent-causation clause can be applied to the facts underlying the claim, there is no coverage if even one contributing cause is an excluded event. *Id*. at 27. The Insurance Services Office, an advisory organization, set forth in its 1990 homeowners' property insurance form this example of a standard anticoncurrent-causation clause:

> " 'We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in *any* sequence to the loss.' " (Emphasis added.) *Id*. (quoting Insurance Services Office, Homeowners Policy-Broad Form (HO 00 03 04 91) (1990)).

¶ 24        The Bozeks argue that the instant anticoncurrent-causation clause's omission of the word "any" changes the meaning of the clause. Again, the clause states: "We do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or *in sequence*, to the loss." (Emphasis added.)

¶ 25        The Bozeks focus on the phrase, "in sequence." However, this is the wrong portion of the clause upon which to focus. Erie added to this misunderstanding by arguing that the use of the words "concurrently" and "in sequence" avoids coverage where two events, one covered and one excluded, *occur* at the same time or one after the other. Erie should have stated that the use of the words "concurrently" and "in sequence" avoids coverage where two events, one covered and one excluded, *contribute to the loss* at the same time or one after the other.

¶ 26        When two perils converge at the same point in time, contemporaneously and operating in conjunction, there is a "concurrent" cause or event. *Corban*, 2008-IA-00645-SCT, ¶ 36. The sentence structure in the instant anticoncurrent causation clause is consistent with this proposition of law. "Concurrently" is an adverb that modifies "contribute[ ]." Likewise, the term "in sequence" functions in the sentence as the adverb "sequentially" and also modifies

"contribute[ ]." As such, as far as any sort of order, sequence, or timing is concerned, we look to the point in time that the cause contributed to the loss, not the point in time that the cause came into existence. Here, we do not look at the point in time that the valve failed; we look at the point in time that the failed valve contributed to the loss. The failed valve and the hydrostatic pressure contributed concurrently to the loss.

¶ 27    A look at two cases cited by the Bozeks only confirms our position: *Corban* and *Robichaux*. The Bozeks cite *Corban* and *Robichaux* for the proposition that, in their words, "coverage is a vested right of the insured that cannot be defeated by a subsequent event, even if the event is a named exclusion."

¶ 28    In *Corban*, the insureds incurred losses caused by physical damage to their residence during 2005's Hurricane Katrina. *Id.* ¶ 1. The insureds' policy covered losses due to wind but excluded losses due to flood. Following an inspection of the property, the insurance company concluded that "the majority" of the damage to the property was due to flood. *Id.* ¶ 2. It denied coverage based on the policy's anticoncurrent-causation clause. [2] The anticoncurrent-causation clause stated:

> " 'We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.' " (Emphases omitted.) *Id.* ¶ 28.

¶ 29    On summary judgment review, the court looked to the terms "loss," "concurrently," and "in any sequence." Because the policy did not define the terms, the court looked to the terms' plain and ordinary meanings. The court determined that "loss" "occurs at that point in time when the insured suffers deprivation of, physical damage to, or destruction of the property insured." *Id.* ¶ 31. It explained that an insured's right to be indemnified for a covered loss vests *at the time of the loss*. *Id.* Once a duty to indemnify arises, it cannot be extinguished by a successive cause or event. *Id.* When different forces have caused *different damage*, the term "loss" should not refer to the total loss. *Id.* ¶ 33. Rather, the particular losses caused by a covered event are covered and the particular losses caused by an excluded event are not covered. *Id.* ¶ 32.

¶ 30    Next, the court determined that "concurrently" meant that the two "perils (wind and flood) contemporaneously converged, operating in conjunction to cause loss." *Id.* ¶ 37. As such, if two perils, one covered and one excluded, converge at the same time to result in a single loss, the "concurrent" provision would apply and the anticoncurrent-causation clause would "clearly exclude[ ] coverage." *Id.*

¶ 31    Finally, the court determined that the term " 'in any sequence' " meant " 'sequentially.' " *Id.* ¶ 38. " '[S]equentially,' " in turn, meant, "[f]orming or marked by a sequence" or "forming a sequence or consequence." (Internal quotation marks omitted.) *Id.* The term "in any sequence" could not be used to divest an insured of the right to be indemnified for a covered loss. *Id.*

¶ 32    Applying these principles, the court determined that the anticoncurrent-causation clause did *not* apply to at least a portion of the damage. *Id.* The evidence that had thus far been presented showed that the *same loss* with multiple causes was not at issue. Rather, the subject

---

[2]The insureds did receive partial payment based on other portions of the policy not at issue in the case or relevant to our case.

perils acted at different times, causing different damage, resulting in *separate losses*. *Id*. ¶ 43. The court concluded:

> "[A] finder of fact must determine what losses, if any, were caused by wind, and what losses, if any, were caused by flood. If the property suffered damage from wind, and separately was damaged by flood, the insured is entitled to be compensated for those losses caused by wind. Any loss caused by '[flood] damage' is excluded. If the property first suffers damage from wind, resulting in a loss, whether additional '[flood] damage' occurs is of no consequence, as the insured has suffered a compensable wind-damage loss." *Id*. ¶ 44.

However, the anticoncurrent-causation clause precluded coverage for the subsequent flooding, even though the flood water had been pushed in by the wind. *Id*. ¶ 48. In that instance, the wind and the water " 'contribut[ed] concurrently' " to the loss. *Id*. ¶ 49.

¶ 33    *Robichaux* also involved insureds who incurred losses caused by physical damage to their residence during Hurricane Katrina. *Robichaux*, 2010-CA-00109-SCT. The insureds' policy covered loss caused by a hurricane windstorm but excluded loss caused by flooding, including flooding resulting from high tides or storm surges that occur in a hurricane. *Id*. ¶ 16. The policy also contained an anticoncurrent-causation clause, which stated:

> " 'We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.' " *Id*.

On summary judgment review, the court held that the evidence showed that not all of the damage was caused by the simultaneous convergence of wind and water. *Id*. ¶ 18. For example, the engineering expert had opined that the property sustained wind damage, such as the loss of roof shingles, *before* the property was pushed down by the storm's water surge. *Id*. As such, the anticoncurrent-causation clause did not apply to that damage. *Id*. The insureds were entitled to compensation for the wind damage that occurred prior to the storm surge; coverage for that particular loss had vested. *Id*. However, the anticoncurrent-causation clause precluded coverage for subsequent damage caused by the storm surge, even though that surge was driven by the wind. *Id*. In that instance, the wind and the water would have converged to cause a single loss. *Id*.

¶ 34    Unlike in *Corban* and *Robichaux*, the covered event here did not lead to a separate, or different, loss. Without a separate loss, the Bozeks' interpretation of the anticoncurrent-causation clause would lead to an untenable result. See *United States Fire*, 312 Ill. App. 3d at 155. Again, the Bozeks contend that they are entitled to coverage for the loss caused by the failed pressure-release valve, stating that coverage for that loss vested and cannot be undone by a subsequent excluded event. However, the Bozeks' position begs the question, *what loss*? The failed pressure valve did not cause any loss *until* it converged with the excluded event. Put another way, prior to the excluded event, there was no loss for which coverage could conceivably vest. The Bozeks want coverage for the uplifted pool and damaged concrete. Neither of these physical losses occurred until the hydrostatic pressure acted upon the sides of the pool. Like the water pushed in by the wind in *Corban* and the storm surge in *Robichaux*, the uplift of the pool resulted from the *convergence* of two causes, the hydrostatic pressure and the valve's failure to relieve that pressure. The two causes "contributed concurrently" to the loss. Thus, the anticoncurrent-causation clause plainly precludes coverage.

¶ 35    Under the Bozeks' interpretation, when the first event is covered and it sets into motion a chain of events that leads to a loss, the loss is covered, even if later events in the chain are excluded. In actuality, this is a restatement of the efficient-proximate-cause rule, *i.e.*, "if a risk of loss that is specifically insured against in the insurance policy sets in motion, in an unbroken causal sequence, the events that cause the ultimate loss, even though the last immediate cause in the chain of causation is an excluded cause." Swisher, *supra*, at 24. We leave for another court to determine whether the use of the phrase "in sequence," as opposed to "in *any* sequence," when applicable to the underlying fact pattern, so neuters the anticoncurrent-causation clause as to transform it into a statement of the efficient-proximate-cause rule, the very rule that a typical effective anticoncurrent-causation clause is written to avoid.

¶ 36    We have concluded that, here, application of the anticoncurrent-causation clause precludes coverage as a matter of law. We turn to the Bozeks' alternative argument. Ultimately, however, we determine that it is forfeited due to insufficient briefing.

¶ 37    The Bozeks hint that, in general, Illinois courts should hold anticoncurrent-causation clauses to be unenforceable as against public policy. Their public policy argument reads:

> "Not surprisingly, [anticoncurrent-causation clauses] have been rejected by several other state courts because of their oppressive use to defeat the paying insureds' reasonable expectations of coverage. See, *e.g.*, *Wright v. Safeco Ins. Co. of America*, 109 P.3d 1 (Wash. Ct. App. 2004); *West. Nat'l Mut. Ins. Co. v. Univ. of North Dakota*, 643 N.W.2d 4 (N.D. 2003); *West Virginia Fire & Cas. Co. v. Mathews*, 543 S.E.2d 664 (W. Va. 2001); *Garvey v. State Farm Fire & Cas. Co.*, 770 P.2d 704 (Cal. 1989). As the Complaint at issue alleged: 'Illinois law has never formally recognized anticoncurrent causation clauses on public policy grounds,' and this Honorable Court could dispose of almost all issues by finding the anticoncurrent causation provision at issue to be unenforceable."

The cases cited by the Bozeks are off-point. *Wright v. Safeco Insurance Co. of America*, 109 P.3d 1 (Wash. Ct. App. 2004), *West Virginia Fire & Casualty Co. v. Mathews*, 543 S.E.2d 664 (W. Va. 2000), and *Garvey v. State Farm Fire & Casualty Co.*, 770 P.2d 704 (Cal. 1989), merely discuss the efficient-proximate-cause rule, without reference to a competing anticoncurrent-causation clause. *Western National Mutual Insurance Co. v. University of North Dakota*, 2002 ND 63, ¶ 20, 643 N.W.2d 4, 13, holds that, where a state statutorily adopts the efficient proximate cause rule, insurance companies may not contract around it with an anticoncurrent-causation clause. The Bozeks have not cited any such statute in Illinois. Notifying the court of a potential issue and citing a handful of cases but without discussion is not the same as briefing and arguing an issue. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). The Bozeks have inappropriately placed the burden of research and argument on the court in informing us that we "could" find the anticoncurrent-causation clause to be unenforceable. Only a minority of jurisdictions have found anticoncurrent-causation clauses to be unenforceable. See, *e.g.*, *Boazova v. Safety Insurance Co.*, 968 N.E.2d 385, 394 (Mass. 2012). The majority of jurisdictions have rejected public policy challenges. *Id*. This is simply too complex an issue to address essentially *sua sponte*. The Bozeks have forfeited any public policy argument by virtue of insufficient briefing.

¶ 38    We have chosen to publish this decision because there are no other reported cases in Illinois addressing anticoncurrent-causation clauses. However, we intend for a narrow

application of this decision. We have touched upon, but not decided, many issues, such as: (1) whether efficient or dominant proximate cause is the default requisite causal nexus in the absence of contrary policy language; (2) whether the use of the phrase, "in sequence," as opposed to, "in *any* sequence," when applicable to the underlying facts, transforms an anticoncurrent-causation clause into a statement of the efficient-proximate-cause rule; and (3) whether public policy renders anticoncurrent-causation clauses unenforceable. We leave the resolution of these issues for future courts.

¶ 39                                 III. CONCLUSION
¶ 40          For the aforementioned reasons, we affirm the trial court's judgment.

¶ 41          Affirmed.