In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-1865

AFM MATTRESS COMPANY, LLC

*Plaintiff-Appellant,*

*v.*

MOTORISTS COMMERCIAL MUTUAL INSURANCE COMPANY,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20 CV 3556 — **Manish S. Shah**, *Judge.*

———————————

ARGUED NOVEMBER 10, 2021 — DECIDED JUNE 16, 2022

———————————

Before MANION, ROVNER, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Motorists Insurance issued a policy to AFM Mattress with a broad and unambiguous Virus Exclusion. In March 2020 and following, AFM Mattress allegedly suffered losses when it had to close its stores under government orders due to the COVID-19 pandemic. AFM Mattress sued Motorists Insurance for a declaration of coverage. The judge dismissed the case for failure to state a claim. We affirm.

## I. Bed bugs?

AFM Mattress Company ran 52 mattress stores in Indiana and Illinois. Motorists Commercial Mutual Insurance Company insured AFM with a policy covering loss of Business Income, Extra Expense, and loss due to actions of a Civil Authority.

The **Business Income** provision states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

The **Extra Expense** provision states:

> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>
> (2) Minimize the "suspension" of business if you cannot continue "operations".

The **Civil Authority** provision states:

> In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.
>
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

But the policy also contained a **Virus Exclusion**:

> **A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to

> forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.
>
> **B.**  We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

AFM puts the occurrence this way: "When the COVID-19 pandemic hit in early 2020 and the governors of Illinois and Indiana ordered the closure of business throughout their respective states, AFM was forced to cease business activities at all 52 of its stores." (Appellant's Br. at 5.) AFM submitted a claim for coverage. Motorists denied it.

## II. Procedural posture

AFM sought a declaratory judgment in Illinois state court. Motorists removed the action to district court and then moved to dismiss based on the Virus Exclusion. The judge dismissed without prejudice. AFM amended its complaint to add the doctrine of regulatory estoppel. Motorists moved for dismissal again. The judge dismissed with prejudice, based on the Virus Exclusion.

AFM appeals, arguing that regulatory estoppel should prevent the Virus Exclusion from barring AFM's claims for coverage, and arguing that in any event the Virus Exclusion does not apply to AFM's claim for Civil Authority coverage.

## III. Analysis

### A. Standards

We review *de novo* a grant of dismissal for failure to state a claim, accepting all well-pleaded facts as true and drawing all reasonable inferences in plaintiff's favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

The parties correctly agree Illinois substantive law applies. Under Illinois law, the general rules of contract interpretation control interpretation of insurance policies, which are contracts. *Scottsdale Ins. Co. v. Columbia Ins. Grp.*, 972 F.3d 915, 919 (7th Cir. 2020). Our goal is to "ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.*

We read all provisions of the policy together, and allow meaning to every part of the contract, so no part is mere surplusage. *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 954–55 (7th Cir. 2020). We give effect to the plain and ordinary meaning of unambiguous language. *Liberty Mut. Fire. Ins. Co. v. Clayton*, 33 F.4th 442, 447 (7th Cir. 2022). We do not strain to find ambiguity where none exists. *See Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005).

### B. Regulatory estoppel and the specter of pandemic

The language of the Virus Exclusion is broad and clear. But AFM seeks to avoid the exclusion by invoking the doctrine of regulatory estoppel.

AFM claims that Motorists, through Insurance Services Office, Inc., misrepresented the Virus Exclusion to the Illinois Department of Insurance in 2006 or 2007 so that the regulators would approve it. ISO made this statement to the regulators:

> While property policies have not been a source
> of recovery for losses involving contamination
> by disease-causing agents, the specter of pan-
> demic or hitherto unorthodox transmission of
> infectious material raises the concern that insur-
> ers employing such policies may face claims in
> which there are efforts to expand coverage and
> to create sources of recovery for such losses,
> contrary to public intent.

AFM claims this statement is false because property policies
*had* historically covered losses caused by severe acute respir-
atory syndrome, Escherichia coli, and other health-threaten-
ing organisms. By mischaracterizing the Virus Exclusion—the
argument goes—as merely a clarification of existing coverage
under property policies, as opposed to an additional exclu-
sion, Motorists secured a reduction of coverage without a cor-
responding reduction in premiums.

The main problem for AFM is that Illinois does not recog-
nize regulatory estoppel. The New Jersey Supreme Court em-
braced regulatory estoppel some 30 years ago. *Morton Int'l,
Inc. v. Gen. Accident Ins. Co.*, 134 N.J. 1 (N.J. 1993), *cert. denied*,
512 U.S. 1245 (1994). The doctrine's basic idea is that insurers
should not get away with saying one thing to an insurance
regulator to gain approval of a provision but saying a differ-
ent thing to an insured seeking coverage. But Illinois has not
adopted the doctrine. *See Travelers Ins. Co. v. Eljer Mfg., Inc.*,
757 N.E.2d 481, 496 (Ill. 2001) ("Because the words of the pol-
icy are unambiguous, it is unnecessary for this court to con-
sider extrinsic evidence of the policy's purported meaning.").

AFM points us to no Illinois case adopting the doctrine of
regulatory estoppel in this context. This is because there are

none. Instead, AFM directs us to *American States Insurance Co. v. Koloms*, 687 N.E.2d 72 (Ill. 1997). But as AFM admits, *Koloms* never mentions "regulatory estoppel." This is because *Koloms* is not about regulatory estoppel.

In *Koloms*, a furnace in a two-story commercial building began emitting carbon monoxide and other noxious fumes. People inhaled the fumes, became ill, and sued the property owners. The owners tendered the complaints to their insurer. The insurer sought a declaration from an Illinois state court that it had no duty to defend or indemnify the owners because of a pollution exclusion in the policy:

> This insurance does not apply to:
>
> …
>
> 'Bodily injury' or 'property damage' arising out of actual, alleged or threatened discharge, dispersal, release or escape of pollutants … [a]t or from premises you own, rent or occupy … .

*Koloms*, 687 N.E.2d at 74 (quoting insurance policy). The policy defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.*

Arguing that "pollutants" was unambiguous, the insurer maintained that the emission of carbon monoxide fumes constituted the "release" of a gaseous "irritant or contaminant," so the pollution exclusion applied.

The Supreme Court of Illinois expressed concern that a "purely literal interpretation" of the exclusion, "without regard to the facts alleged in the underlying complaints," would fail to resolve the issue adequately. *Id.* at 79. The court said it

was "troubled" by the "overbreadth" of the exclusion's language and by the "manifestation of an ambiguity which results when the exclusion is applied to cases which have nothing to do with 'pollution' in the conventional, or ordinary, sense of the word." *Id.* The court worried about "potentially limitless application" of the exclusion. *Id.* After all, the insureds argued that without some judicially imposed parameters, "irritants" and "contaminants" could include water and air. *Id.* at 77–78. The court decided to restrict the exclusion to only hazards traditionally associated with environmental pollution. *Id.* at 79.

The court added extra buttresses to its conclusion by considering the exclusion's drafting history, which, according to the court, showed the insurance industry's intent to limit the exclusion to hazards traditionally associated with environmental pollution. In the course of presenting this drafting history, the court relied heavily on *Morton*. The *Koloms* court concluded that the history of the pollution exclusion showed that the main motivation behind the exclusion's drafting was avoiding enormous exposure from environmental litigation. *Id.* at 81. *Morton* illuminated parts of this drafting history.

But *Koloms* did not rely on *Morton* for the regulatory estoppel doctrine. *Koloms* concluded that absurdity prevented the applicability of the exclusion's literal language. *Koloms* turned to *Morton* to elucidate the history of the exclusion to show what the drafters meant by it. But *Koloms* never hinted at relying on some difference between what the insurer said to a regulator and what the insurer said to the insured in court.

So Illinois has not recognized regulatory estoppel. And AFM Mattress has shown us no compelling reason to think Illinois would in this sort of case.

**C. Does the Virus Exclusion apply to Civil Authority coverage?**

AFM argues that even if regulatory estoppel does not bar reliance on the Virus Exclusion, the terms of this exclusion do not apply to AFM's claims for business losses arising under Civil Authority coverage.

We quoted the Civil Authority coverage provision above. To paraphrase this provision without nuance: Under the Civil Authority coverage provision, when a civil authority prohibits access to AFM's insured property in response to certain dangerous physical conditions at different, adjacent property, and that access-prohibition causes AFM to lose business income or sustain extra expenses, Motorists will pay for this lost business income and extra expenses.

AFM argues that under this provision, it is seeking coverage for damages it suffered from the closure orders issued by the governors and is *not* seeking coverage for damages caused by any virus itself. So, AFM argues, the Virus Exclusion does not apply to Civil Authority coverage because that exclusion pertains only to "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." In other words, AFM argues the Virus Exclusion only applies to losses caused by viruses, but AFM's loss was caused by the closure orders, not by the virus.

But we already foreclosed this argument in *Mashallah*. There, two Illinois businesses sought coverage from West Bend for damages allegedly sustained during the COVID-19 pandemic. *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th

311, 317 (7th Cir. 2021). The two policies contained similar vi-
rus exclusions.

One policy said West Bend would "'not pay for loss or
damage caused directly or indirectly'" by "'[a]ny virus … that
induces or is capable of inducing physical distress, illness or
disease.'" *Id.* at 318 (quoting one policy).

The other policy said West Bend "'will not pay for loss or
damage caused by or resulting from any virus … that induces
or is capable of inducing physical distress, illness or disease.'"
*Id.* (quoting other policy). We found no relevant distinction
between the exclusions.

We rejected the argument that the coronavirus did not
cause the alleged damages. *Id.* at 320–21. We recognized that
Illinois generally "'favors the efficient-or-dominant-proxi-
mate-cause rule in the absence of contrary language in the
policy.'" *Id.* (quoting *Bozek v. Erie Ins. Grp.*, 46 N.E.3d 362, 368–
69 (Ill. App. Ct. 2015)). "A risk is an efficient or dominant cause
if it 'sets in motion, in an unbroken causal sequence, the
events that cause the ultimate loss.'" *Id.* at 321 (quoting *Bozek*,
46 N.E.3d at 368).

We concluded that "the novel coronavirus causing the
COVID-19 pandemic led directly to the issuance of the gov-
ernment orders, which the complaint alleges as the cause of
the losses and expenses." *Id.* at 321. As we put it, "the virus
set in motion an unbroken causal chain via the government
orders to the purported losses and expenses" and "the coro-
navirus was *the* reason these orders were promulgated." *Id.*

Here, the Virus Exclusion is nearly identical to those in
*Mashallah*. We see no reason to distinguish that case. Even
though the coverage provisions at issue there were not

identical to the Civil Authority coverage provision here, the Virus Exclusion controls. The virus directly caused the government orders which directly caused the alleged losses. AFM essentially admits this when it says in its amended complaint things like: "Illinois Governor J.B. Pritzker issued an executive order on March 15, 2020 banning all public and private gatherings of 50 or more people, in an effort to limit infection and death resulting from the spread of the virus." (AFM's Am. Compl. at 3.)[1] And: "The March 20th order was again in direct response to the continued and increasing presence of the coronavirus on property or around [AFM's] premises." (*Id.* at 12.)

Moreover, by the policy's plain language, Civil Authority coverage only applies when "a *Covered Cause of Loss* causes damage to property other than property at the described premises … ." (Emphasis added.) The policy defines "Covered Cause of Loss" as "direct physical loss unless the loss is excluded or limited in this policy." So Motorists agreed to cover AFM when a Covered Cause of Loss caused damage to a nearby property, triggering the civil authority to prohibit access to AFM's stores. But any damage from a virus was *not* a Covered Cause of Loss because of the policy's Virus Exclusion. So Civil Authority coverage does not apply.

If all this were not clear enough, the Virus Exclusion itself says it "applies to all coverage under all forms and

---

[1] "It was towards the close of the fifth or sixth month of his seclusion, and while the pestilence raged most furiously abroad, that the Prince Prospero entertained his thousand friends at a masked ball of the most unusual magnificence. … And these—the dreams—writhed in and about taking hue from the rooms, and causing the wild music of the orchestra to seem as the echo of their steps." Edgar Allan Poe, *The Masque of the Red Death* (1842) (https://archive.org/stream/themasqueofthere01064gut/1064-8.txt).

endorsements … including but not limited to … forms or endorsements that cover business income, extra expense *or action of civil authority*." (Emphasis added.) AFM neglected to mention this in its briefs.

## IV. Conclusion

The judge did not err in dismissing the amended complaint. We affirm.