In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-3395

MARKET STREET BANCSHARES, INC., parent organization of Peoples National Bank, N.A., a/k/a Peoples National Bank of McLeansboro,

*Plaintiff/Counterclaim Defendant-Appellant*,

*v.*

FEDERAL INSURANCE CO., d/b/a Chubb Group of Insurance Companies,

*Defendant/Counterclaim Plaintiff-Appellee*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:17-cv-36-NJR-SCW — **Nancy J. Rosenstengel**, *Chief Judge*.

ARGUED DECEMBER 10, 2019 — DECIDED JUNE 19, 2020

Before KANNE, SYKES, and BARRETT, *Circuit Judges*.

KANNE, *Circuit Judge*. This is an insurance-coverage dispute between a bank and its insurer. In 2014, the two entered an agreement: in exchange for an insurance premium, the insurer, Federal Insurance Company, would defend and indemnify the bank, Peoples National Bank, against "claims" made

by third parties during the policy period, which ran from April 15, 2014, to April 15, 2017. When they entered this agreement, the bank had been embroiled in an ongoing lawsuit for about a decade. During the damages phase of that lawsuit, in 2016, the plaintiffs in the case argued that the bank owed certain damages, and the bank called upon Federal Insurance to defend against the argument and to cover the bank's corresponding losses. Federal Insurance refused, explaining in part that the damages argument was not a "claim" under the policy.

The bank then sued Federal Insurance in Illinois state court, seeking to recover losses (including defense costs) from the underlying damages argument. Federal Insurance removed the action to federal court and filed a counterclaim for declaratory relief. Both parties moved for summary judgment on the counterclaim, and the district court granted judgment in the insurer's favor.

We affirm because the damages argument in the underlying lawsuit is not a "claim" under the parties' insurance policy.

## I. BACKGROUND

Peoples National Bank[1] became entrenched in litigation after a business deal collapsed, triggering obligations that the bank failed to fulfill. The business deal had to do with a corporation that Terry and Robert Newman formed in 1996 to operate various Taco John's restaurant franchises. The Newmans obtained financing for their operations through

---

[1] Market Street Bancshares, Inc. wholly owns Peoples National Bank, N.A. For simplicity's sake, we refer to both the parent company and its subsidiary as "Peoples" or "the bank."

Peoples, and in 1998 the Newmans entered a lease agreement for a property in Anna, Illinois, where they would operate one of the restaurants.

In 2001, the Newmans agreed to sell their corporation to Amigos Food Service, LLC. The sale involved various agreements by the Newmans, Amigos, and Peoples. One agreement provided that Amigos would secure a $150,000 letter of credit naming the Newmans and Peoples as beneficiaries. Another agreement—between the Newmans and Peoples—provided that $81,000 of the letter-of-credit proceeds would be retained to assure rent payments on the property in Anna, Illinois.

Ultimately, Amigos defaulted on its obligations. Rent on the Anna property went unpaid. And the landlords demanded the unpaid rent from the Newmans, who turned to Peoples for the $81,000 letter-of-credit proceeds set aside for this purpose. But the money wasn't available. Peoples had allocated it to satisfy other debts Amigos had accumulated. As a result, the Newmans failed to pay the overdue rent, the landlords sued the Newmans for it in Illinois state court, and the Newmans filed a third-party complaint against Peoples in 2003. The Newmans alleged that Peoples had breached its contract with them by failing to reserve $81,000 of the letter-of-credit proceeds to satisfy the Newmans' lease obligations. The following year, the Newmans added counts for conversion and breach of fiduciary duty.

About nine years passed before the Illinois trial court entered judgment on the Newmans' contract claim; the court determined that Peoples was liable for breaching its agreement concerning the letter-of-credit proceeds. About two years

after that, in 2015, the court granted summary judgment to the Newmans on their other two counts.

Between those judgments, in 2014, Peoples entered an agreement with Federal Insurance for professional liability insurance. The agreement was for a claims-made policy under which Federal Insurance would defend and indemnify Peoples against "Loss on account of any Claim first made against [Peoples] during the Policy Period." The policy period spanned three years, April 15, 2014, to April 15, 2017.

In 2016, the Newmans' case went to a bench trial on damages for the conversion and breach-of-fiduciary-duty counts. The Newmans argued for and presented evidence of damages based on the so-called "Pledge Agreement"—one of the agreements entered in connection with the Newmans' sale of the corporation. Basically, the Newmans argued that the bank was required, under the Pledge Agreement, to timely notify the Newmans of Amigos's default and that the bank's failure to do so caused certain damages. This was problematic because the Newmans hadn't addressed the Pledge Agreement in their complaint, or otherwise, during the liability phase of litigation. Nevertheless, the trial court permitted the damages evidence over the bank's objection. The Newmans later submitted a written closing argument for the Pledge Agreement damages, and the trial court awarded those damages alongside others.

While that damages issue was pending, Peoples gave Federal Insurance information about the Newmans' lawsuit and contended that the Newmans' damages argument based on the Pledge Agreement was a "claim" made during the policy period, triggering Federal Insurance's duty to defend and indemnify Peoples against it.

Federal Insurance disagreed. It explained that the damages argument was not a "claim" under the policy; and even if it were, it fell outside the covered period, because it would have been considered "first made" when the Newmans commenced the lawsuit in 2003, well outside the policy period.

Seeking to recover its loss from the damages argument, Peoples sued Federal Insurance in Illinois state court. Federal Insurance removed the action to the federal district court, filed a counterclaim for declaratory relief, and moved for summary judgment, which the district court granted.

Before Peoples appealed that decision to us, the Appellate Court of Illinois vacated the underlying damages award in the Newmans' case. *Stevens v. Newman*, 2019 IL App (5th) 170134-U. The state appellate court concluded that the award stemming from the Pledge Agreement could not stand on the facts alleged and proved during the lawsuit's liability phase. So, the court remanded for a new damages trial.

At that point, turning back to the federal indemnity lawsuit, Peoples appealed the summary-judgment decision in Federal Insurance's favor. The bank maintains that the Newmans' damages assertion based on the Pledge Agreement is a "claim," under the insurance policy, that gave rise to Federal Insurance's duty to defend and indemnify. Because the Appellate Court of Illinois vacated the underlying damages award, Peoples no longer seeks to recover loss from the initially awarded damages, themselves; Peoples seeks only to recover loss from defending against the Newmans' argument.

## II. ANALYSIS

With the relevant facts undisputed, the parties' disagreement boils down to whether Federal Insurance had a duty,

under the insurance policy, to defend and indemnify Peoples against the Newmans' damages argument based on the Pledge Agreement. This is a question of law, which we review *de novo*. *See Private Bank & Trust Co. v. Progressive Cas. Ins. Co.*, 409 F.3d 814, 816 (7th Cir. 2005). The parties agree that Illinois law governs.[2]

The insurance policy provides that Federal Insurance has a "duty to defend any Claim covered by" the policy and must pay Peoples for "loss," including "defense costs," on account of a covered "claim." Illinois law recognizes that the insurer's duty to defend arises when "the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993). Stated differently, when "the insurer has no potential obligation to indemnify it has no duty to defend." *Zurich Ins. Co. v. Raymark Indus., Inc.*, 514 N.E.2d 150, 163 (Ill. 1987).

---

[2] When this diversity action was removed to the federal district court, the amount in controversy included the more than $16 million judgment in the underlying case. *See* 28 U.S.C. §§ 1441, 1446. Although that judgment has since been vacated, the diminution in possible recovery does not revoke federal jurisdiction, because "jurisdiction is determined as of the instant of removal." *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (per curiam); *see Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011). The jurisdictional amount-in-controversy requirement was satisfied at that critical time (as was the diversity requirement), so jurisdiction is secure regardless whether the amount in controversy remains above the $75,000 statutory threshold. *See* 28 U.S.C. § 1332; *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938) ("[E]vents occurring subsequent to removal which reduce the amount recoverable … do not oust the district court's jurisdiction once it has attached.").

So, the critical question is: On its face, did the Newmans' damages assertion—advanced about thirteen years into the lawsuit—potentially bring it within the policy's coverage? This inquiry takes us to the policy's terms, which we compare to the Newmans' damages argument. *Cf. Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992).

Under Illinois law, we give the terms of an unambiguous insurance policy their plain and ordinary meaning, reading the policy as a whole and considering "the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *State Farm Mut. Auto. Ins. Co. v. Villicana*, 692 N.E.2d 1196, 1199 (Ill. 1998); *see U.S. Fire Ins. Co. v. Schnackenberg*, 429 N.E.2d 1203, 1205 (Ill. 1981). If a provision is susceptible to only one reasonable reading, no ambiguity exists, and it must be applied as written. *Bruder v. Country Mut. Ins. Co.*, 620 N.E.2d 355, 362–63 (Ill. 1993).

The type of insurance purchased here is a claims-made, professional-liability policy. It provides that Federal Insurance "shall pay, on behalf of [Peoples], Loss on account of any Claim first made against [Peoples] during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act while performing Professional Services, including failure to perform Professional Services." In a claims-made policy like this one, the pertinent risk is that an injured third party will assert a claim against the insured during the policy period. *See Cent. Ill. Pub. Serv. Co. v. Am. Empire Surplus Lines Ins. Co.*, 642 N.E.2d 723, 726 (Ill. App. Ct. 1994). This contrasts with the risk involved in an occurrence policy—the risk that an injurious act or omission will occur during the policy period. *See id.*

The difference between these risks highlights the purpose of a claims-made policy: to "allow the insurance company to easily identify its risk," which in turn may offer insureds more-available and less-expensive policies. *Cont'l Cas. Co. v. Coregis Ins. Co.*, 738 N.E.2d 509, 518 (Ill. App. Ct. 2000) (quoting *Gen. Ins. Co. of Am. v. Robert B. McManus, Inc.*, 650 N.E.2d 1080, 1083 (Ill. App. Ct. 1995)); *see Cent. Ill. Pub. Serv. Co.*, 642 N.E.2d at 727 (quoting *Pac. Emp'rs Ins. Co. v. Superior Court*, 270 Cal. Rptr. 779, 785 (Cal. Ct. App. 1990)). Take an occurrence policy: because the policy protects against the risk of an injurious act or omission occurring during the covered period, the insurer's risk exposure extends beyond the policy's expiration; claims for covered occurrences may be asserted after the policy period ends. Now look at a claims-made policy: because the policy protects against the risk of an injured party bringing a claim against the insured during the covered period, the insurer's risk exposure is clearer; claims brought outside the policy period are not covered.

With these considerations in mind, we evaluate whether the Newmans' damages argument was a "claim" that potentially fell within the policy's coverage. If it was not a "claim" at all, then Federal Insurance had no duty to defend against it. *Cf. U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 932 (Ill. 1991) (explaining that, under occurrence-based policy, insurer would have no duty to defend if the alleged loss did not result from an "occurrence," and examining the policy definition of "occurrence" to determine whether a duty to defend arose).

The policy defines "Claim" as the following:

a. a written demand for monetary or non-monetary relief, including injunctive relief;

    b.  a civil proceeding commenced by the service of a com-
plaint or similar pleading;

    c.  an arbitration proceeding commenced by the submis-
sion of a statement of claim or similar document; or

    d.  a criminal proceeding commenced by the return of an
indictment,

by or on behalf of a Customer or by any party, against [Peo-
ples] for a Wrongful Act, including any appeal therefrom.

Except as may otherwise be provided in … [other parts of
the policy], a Claim will be deemed to have first been made
when such Claim is commenced as set forth in this defini-
tion (or, in the case of a written demand for monetary or
non-monetary relief, when such demand is first received by
[Peoples]).

Peoples contends that the Newmans' written closing argu-
ment in 2016 for damages based on the Pledge Agreement was
"a written demand for monetary or non-monetary relief"
made during the policy period, giving rise to Federal Insur-
ance's duty to defend.

Peoples does not contest that the Newmans' 2003 com-
plaint, which commenced the underlying lawsuit, initiated a
"claim" under the second part of the definition—"a civil pro-
ceeding commenced by the service of a complaint … includ-
ing any appeal therefrom." Nor can Peoples contest that the
Newmans' closing argument in the damages phase of that
lawsuit was part of the civil action begun in 2003. Instead,
Peoples maintains that because the Newmans' damages argu-
ment was not based on the facts and legal theories presented
in the Newmans' operative complaint, the damages argument
was a "claim" in itself.

We conclude that under the policy, a "claim" taking the
form of "a civil proceeding commenced by the service of a

complaint" spans the entire civil action, not just the legal theories and factual allegations in the complaint that commenced the action. And because the Newmans' damages argument was part of the civil action begun by the 2003 complaint, the damages argument is not itself a "claim." We reach this conclusion based on the plain meaning of the policy's terms, read in context and in light of the policy's purpose.

The policy defines "claim," in critical part, as "a written demand for monetary or non-monetary relief, including injunctive relief" or "a civil proceeding commenced by the service of a complaint or similar pleading," including "any appeal therefrom." Even though the conjunction "or" appears between the definition's third and fourth listed elements—not the first and the second—that conjunction connects each of the list's members. *See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141–42 (2018) (recognizing that the conjunction "or" connects each of the terms in the list "automobiles, trucks, or farm implements").

The ordinary meaning of "a civil proceeding" in this context is the whole civil action brought by the third party against the insured. And for each part of the policy definition to have meaning, "a civil proceeding commenced by the service of a complaint or similar pleading" must be excluded from "a written demand for monetary or non-monetary relief."

Start with the term "civil proceeding commenced by the service of a complaint or similar pleading." Although "proceeding" in other contexts could mean something narrower than an entire civil action—a judicial hearing, for example— the surrounding text and underlying purpose of the claims-made policy dictate the broader use of the term here. For one thing, the definition states that the proceeding commences by

the service of a complaint or similar pleading; and under rules of civil procedure, a complaint commences an action as a whole, not just part of one. *See* 735 ILCS 5/2-201(a) ("Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint."); Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").[3] Reinforcing this broad meaning, the definition states that "proceeding" includes "any appeal therefrom."

The purpose of a claims-made policy also reinforces this meaning. Considering that a claims-made policy is geared toward easy identification of the insurer's risk exposure, reading a "civil proceeding" as spanning less than the complete civil action opens the door to a single action between two parties encompassing multiple "claims," which would defeat the purpose of making the insurer's risk exposure easy to identify.

So, the term "civil proceeding" spans the entire civil action begun by a third-party complaint against the insured. This means that the Newmans' underlying lawsuit against Peoples—including the damages phase—comprised a claim commenced by the 2003 complaint.

The bank points to the Appellate Court of Illinois's decision vacating the damages award as confirmation that the Newmans' Pledge Agreement damages argument constituted a new "claim." It is true that the Newmans' damages argument went beyond the scope of the legal theories and facts advanced in the operative complaint, resulting in a damages

---

[3] The policy's indication that "service" rather than "filing" commences the proceeding does not change our analysis. A complaint that is filed and served commences an action as a whole.

award that didn't comport with due process. *See Stevens*, 2019 IL App (5th) 170134-U, ¶¶ 47–56. But the question here is not where the causes of action in a lawsuit begin and end; it is whether the damages argument is a "claim" under the insurance policy. Put differently, the policy's terms—rather than the plaintiffs' causes of action—dictate the scope of a "claim."

Returning to the policy's terms, for the Newmans' damages argument to be a "claim" commenced when Peoples received the Newmans' written closing argument, the policy term "a written demand for monetary or non-monetary relief, including injunctive relief" must include assertions made within another "claim": a civil proceeding commenced by the service of a complaint. This cannot be. Under that reading, the policy allows claims incepted within a claim, which not only contravenes the policy's text, read altogether, but also subverts the policy's purpose.

The bank's reading contravenes the policy's text by rendering the second part of the "claim" definition superfluous. Under the reading the bank urges, "a written demand for monetary or non-monetary relief, including injunctive relief" would engulf "a civil proceeding commenced by the service of a complaint or similar pleading"—because a served complaint would always be "a written demand for monetary or non-monetary relief." In other words, the "civil proceeding" part of the definition would be meaningless and superfluous. Yet, Illinois law commands that "[a]ll the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it," *Schnackenberg*, 429 N.E.2d at 1205, and "meaning and effect must be given to every part of the contract including all its terms and provisions, so no part is rendered meaningless or surplusage unless absolutely

necessary," *Coles-Moultrie Elec. Co-op. v. City of Sullivan*, 709 N.E.2d 249, 253 (Ill. App. Ct. 1999) (citing *Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683, 689 (Ill. 1958)).

Here, the meaninglessness and surplusage of "a civil proceeding commenced by the service of a complaint or similar pleading" is not absolutely necessary. Rather, this term comfortably holds independent meaning by excluding all other would-be claims: if a complaint commences a civil proceeding against the insured, no other claim may form within that claim. The same exclusivity applies to the first part of the definition: if a written demand for monetary or non-monetary relief commences a claim, then no other claim may form within it. *Cf. FCC v. Pacifica Found.*, 438 U.S. 726, 739–40 (1978); *People v. Phagan*, 130 N.E.3d 396, 416 (Ill. App. Ct. 2019) (recognizing that ordinary principles of grammar suggest that, when items are separated by a semicolon, this ordinarily means the items should be read "disjunctively, that is, only one could apply at a time" (citing *People v. Jackson*, 105 N.E.3d 996, 1012 (Ill. App. Ct. 2018)).

The purpose underlying the claims-made policy likewise indicates that each type of "claim" excludes the others. Just as giving "proceeding" a narrow meaning would muddy the insurer's risk exposure, so too would the scenario of overlapping claims. If an argument in the damages phase of a lawsuit could be both part of a "claim" begun by a complaint and itself a "claim," the insurer's risk exposure would be significantly more difficult to calculate. For example, the insurer could not know that all of a civil-proceeding "claim" begun before the covered policy period would fall outside the policy coverage; new "claims" could continue to turn up years after the filing of the initial complaint. Thus, the bank's reading

conflicts with the policy's purpose as well as the terms' plain meaning, rendering the bank's reading unreasonable.

We therefore enforce the only reasonable reading of "claim" as defined by the policy: when an assertion is made within a civil-proceeding "claim," that assertion cannot itself be a "claim." The Newmans' Pledge Agreement argument is such an assertion. It was made within the "claim" commenced in 2003 and therefore is not itself a "claim," making it clearly fall outside the policy's coverage. For this reason, Federal Insurance had no duty to defend against the damages argument. And with "no potential obligation to indemnify" Peoples against the argument, Federal Insurance is entitled to judgment as a matter of law. *Zurich*, 514 N.E.2d at 163. The district court thus properly granted summary judgment to Federal Insurance.

The parties present alternate arguments supposing the Pledge Agreement assertion were a "claim." Because the assertion is not a "claim," we need not address those arguments.

AFFIRMED.