In the

# United States Court of Appeals
## for the Seventh Circuit

_____

Nos. 20-1826 & 20-1830

THE HANOVER INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

R.W. DUNTEMAN COMPANY, et al.,

*Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-cv-1979 — **Mary M. Rowland**, *Judge.*

_____

ARGUED JANUARY 15, 2021 — DECIDED OCTOBER 24, 2022

_____

Before SYKES, *Chief Judge*, and WOOD and HAMILTON, *Circuit Judges.*

SYKES, *Chief Judge*. This insurance-coverage dispute arises from a conflict among family members over ownership interests in the family's construction business located in Addison, Illinois. Jane Dunteman, the matriarch, held a minority stake in Du-Kane Asphalt Company and Crush Crete, Inc., two companies owned and operated by her husband, Paul Dunteman Sr., and other family members.

The couple divorced in 2009, and Jane died in March 2017. Paul died six months later.

Jane's death spawned litigation in state court over the size of her interest in the family business; her estate sued the companies and her sons, Paul Jr., Jeffrey, Roland, and Matthew Dunteman. The four Dunteman brothers are the majority shareholders and officers and directors of the companies. Their sister, Audrey, as the personal representative of her mother's estate, alleged that Jane's ownership interest was wrongfully diluted after their parents divorced.

All six codefendants were insured under consecutive "claims made" liability policies issued in 2017 and 2018 by The Hanover Insurance Company to R.W. Dunteman Company, an affiliated family business. The distinguishing feature of "claims made" insurance, as the name suggests, is that the insured must notify the insurer of a "claim" in the same policy period in which it is first "made." If a claim goes unreported in the relevant policy period, then the insurer owes no duty to defend or indemnify.

The estate filed its suit in August 2017. The wrinkle is that the original complaint sought a declaratory judgment and named only Du-Kane Asphalt as the defendant, though the allegations concerned the brothers' actions as officers, directors, and shareholders. In an amended complaint filed in July 2018, the estate broadened its factual allegations and added Crush-Crete and the Dunteman brothers as codefendants. At that point the insureds first notified Hanover and sought coverage under the 2018 policy.

Hanover denied the request because the claim was first made in 2017 and had not been timely reported during that

policy period. After denying coverage, Hanover filed suit in federal court seeking a declaration that it owes no defense or indemnity. The insureds counterclaimed for breach of contract. The district court entered judgment for Hanover.

We affirm. The estate's original complaint triggered a reportable claim during the 2017 policy period. Subsequent amendments to that complaint did not commence a new and distinct claim first made in 2018. The insureds' notice to Hanover was therefore untimely and no coverage is owed.

## I. Background

The Dunteman brothers are majority shareholders, officers, and directors of three construction businesses founded by their father's family: R.W. Dunteman Company, Du-Kane Asphalt, and Crush-Crete. Their mother, Jane, was a minority shareholder in Du-Kane Asphalt and Crush-Crete, and their sister, Audrey Coffey, serves as the personal representative of Jane's estate.

As relevant here, all three companies and the Dunteman brothers were insured under consecutive 12-month "D&O" policies issued by Hanover Insurance in 2017 and 2018. The policies provided "Directors, Officers, and Entity Liability Coverage" on a claims-made basis from March 31, 2017 to March 31, 2018, and from March 31, 2018 to March 31, 2019. Specifically, the Hanover policies provided defense and indemnity coverage for a "Loss" that an "Insured Entity" or "Insured Individual" is "legally obligated to pay due to a Claim first made … during the Policy Period." However, coverage was conditioned on timely notice to the insurer. With an exception not relevant here, the insureds were required to report claims to Hanover "as soon as practica-

ble" after becoming aware of them or at the latest within 90 days of the policy's expiration date.

## A. The Underlying State-Court Litigation

We take the details of the underlying litigation from the original and amended complaints in the state-court action. Jane Dunteman acquired shares in Du-Kane Asphalt and Crush-Crete during her long marriage to Paul Dunteman Sr. When the couple divorced in 2009, they agreed to retain roughly equal ownership of Du-Kane Asphalt. Tax documents that year and the years that followed showed that Paul Sr. and Jane owned approximately 26% and 24% of Du-Kane Asphalt's shares, respectively.

In the years after the divorce, the Dunteman brothers gradually gained majority control of Du-Kane Asphalt. First, Paul Sr. gifted his shares to his sons in December 2012. Then, in 2013 Jane's ownership interest in Du-Kane Asphalt was reduced from 24% to 10% without consideration and without "her knowledge, permission or consent." The shares taken from Jane were divided equally among the Dunteman brothers and transferred to them. After Jane died in March 2017, Du-Kane Asphalt sought to recoup from the estate what it said were overpaid dividends, maintaining that Jane "never owned 24% of the business" and was "incorrectly listed as a 24% shareholder" until "the issue was corrected in 2013." Audrey Coffey, as the personal representative of Jane's estate, disputed that characterization.

On August 28, 2017, the estate filed suit in state court seeking a declaratory judgment against Du-Kane Asphalt that Jane owned 24% of the company at the time of her death and asking the court to invalidate the wrongful reduction in

her ownership interest. The lawsuit was not reported to Hanover during the 2017 policy period.

On July 6, 2018, while discovery was still underway, the estate moved for leave to file a second amended complaint. (The first amended complaint, filed in December 2017, is not relevant here.) The second amended complaint[1] broadened the factual allegations and added Crush-Crete and the Dunteman brothers as codefendants. In particular, the estate specifically alleged that the Dunteman brothers—as directors and officers of Du-Kane Asphalt—were responsible for the surreptitious reduction in Jane's shares.

The estate also detailed what it saw as a broader scheme by the Dunteman brothers to freeze out Jane (and later her estate) as a minority shareholder in Du-Kane Asphalt and Crush-Crete. The estate alleged, for example, that Du-Kane Asphalt and Crush-Crete stopped paying dividends owed to Jane after her death. And although the companies cited profitability concerns, the estate maintained that the Dunteman brothers deliberately depressed earnings by, among other things, diverting business away from Du-Kane Asphalt and Crush-Crete. The second amended complaint also alleged that Du-Kane Asphalt and Crush-Crete stopped holding annual shareholder meetings and that the Dunteman brothers failed to repay a $1.3 million loan they had received from Du-Kane Asphalt in 2005. That loan, in turn, paid off a bank loan the brothers had obtained to buy

---

[1] The estate filed its motion for leave to amend together with the proposed second amended complaint on July 6, 2018. It filed its verified second amended complaint on July 16, 2018.

out shares in the companies held by Allan Dunteman (Paul Sr.'s brother) and his wife, Sheila.

The second amended complaint retained the request for a declaratory judgment against Du-Kane Asphalt and added counts against Du-Kane Asphalt and Crush-Crete for minority-shareholder oppression and against the Dunteman brothers for breach of fiduciary duty, fraud, and conspiracy.

## B. Federal Coverage Litigation

On July 13, 2018—about a week after the estate moved for leave to file the second amended complaint—Du-Kane Asphalt, Crush-Crete, and the Dunteman brothers first notified Hanover of the estate's suit. The insureds sought coverage under the 2018 policy. Hanover denied the request, explaining that the estate's lawsuit was first filed during the 2017 policy period and that the insureds had failed to provide notice of it within the time prescribed by the policy. The insurer then commenced this coverage action in federal court seeking a declaration that it did not owe a defense or indemnity based on the untimely notice of the estate's lawsuit. The insureds counterclaimed for breach of contract.

The case was submitted on cross-motions for judgment on the pleadings. *See* FED. R. CIV. P. 12(c). The parties disputed whether the estate's original complaint initiated a reportable claim under the 2017 policy.[2] The policy defines "Claim" to include any "[c]ivil proceeding commenced by the service of a complaint or similar pleading" against an

---

[2] The 2017 policy's provisions are primarily relevant here, so we'll hereafter simply refer to it as "the policy" unless context requires that we distinguish the two policy years.

insured "for a Wrongful Act."[3] In turn, "Wrongful Act means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty committed or attempted, or allegedly committed or attempted by" an insured individual or entity.

Because the second amended complaint broadened the underlying litigation, the parties also disagreed as to whether it was merely a continuation of the claim filed in August 2017 or the creation of a new one. The policy's aggregation provisions bear on this question. First, the policy treats all "Related Wrongful Acts"—broadly defined as acts that are "logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event, result, injury or decision"—as functionally one wrongful act. And "all Related Wrongful Acts will be deemed to have occurred at the time the first of such Related Wrongful Acts occurred[,] whether prior to or during the Policy Period."

In a similar vein, the policy also aggregates "Related Claims," broadly defined as "all Claims based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damage or events or the same series of facts, circumstances, situations, transactions, results, damage or events." "Related Claims will be considered as a single Claim made in the Policy Period … in which the earliest of such Related Claims was first made or first deemed to have been made … ." And they are likewise "subject to the Limits of Liability, Retention and other terms and conditions applicable to the earliest Related Claim."

---

[3] The policy includes several other triggering events that create reportable "claims," but no other variants are relevant here.

The district judge agreed with Hanover's argument regarding the untimeliness of the insureds' notice. First, she held that the estate's original complaint qualified as a reportable claim under the 2017 policy because it contained allegations of wrongful acts against Du-Kane Asphalt, an insured. She further concluded that amendments to a complaint in the same civil action could not create a new claim. Because the original complaint and the second amended complaint concerned "Related Wrongful Acts" and "Related Claims," the policy's aggregation provisions treated them as a single claim reportable when first made in 2017. Accordingly, the 2018 notice to Hanover was too late. The judge held that the insurer's no-coverage determination was sound and entered judgment in its favor.

## II. Discussion

We review the district court's order granting judgment on the pleadings de novo. *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). Like a dismissal for the failure to state a claim under Rule 12(b)(6), our task is to determine "whether the well-pleaded factual allegations viewed in favor of the nonmoving party state a facially plausible claim for relief." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018).

Whether Hanover was right to deny coverage hinges on our review of the text of the policy and the allegations in the underlying state-court case. Under Illinois law, which all agree controls here, we must "give the terms of an unambiguous insurance policy their plain and ordinary meaning, reading the policy as a whole and considering the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Mkt. St. Bancshares, Inc.*

*v. Fed. Ins. Co.*, 962 F.3d 947, 952 (7th Cir. 2020) (quotation marks omitted).

Timely reporting of claims is key for an insurer's duties under a "claims made" D&O policy. Generally speaking, these policies require "not only that the claim be first made during the policy period, but also that it be reported to the insurer during the policy period." *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1083 (7th Cir. 2007) (quotation marks omitted).

"The purpose of a claims-made policy is to allow the insurance company to easily identify risks, allowing it to know in advance the extent of its claims exposure and compute its premiums with greater certainty." *Uhlich Child.'s Advantage Network v. Nat'l Union Fire Co. of Pittsburgh*, 929 N.E.2d 531, 537 (Ill. App. Ct. 2010). Because the insurer has a clearer picture of its risk exposure, it "in turn may offer insureds more-available and less-expensive policies." *Mkt. St. Bancshares*, 962 F.3d at 952.

The trade-off, however, is that the insured must comply with strict reporting requirements to get the benefit of this less expensive coverage. If a claim was made in one policy period but reported in another, then the insurer owes no duty to defend or indemnify.[4]

---

[4] Occurrence policies, in contrast, are more expensive because the insurance company bears more risk for claims that go unreported in a given policy period. *See Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 952 (7th Cir. 2020) (explaining that an occurrence policy "protects against the risk of an injurious act or omission occurring during the covered period" and that "claims for covered occurrences may be asserted after the policy period ends").

### A. The Estate's Original Complaint Commenced a Claim

We begin with the insureds' argument that the estate's original complaint in the state-court action was not a "claim" under the policy. If they're right, then there was nothing to report during the 2017 policy period and Hanover's justification for denying coverage falls apart.

Recall that the policy defines a "claim" to include a "[c]ivil proceeding commenced by the service of a complaint" against an insured "for a Wrongful Act." The insureds do not dispute that the estate's original complaint "commenced" a "civil proceeding," but they insist that the original complaint did not yet include allegations of a wrongful act. That's an untenable position under the policy's broad definition of the term "wrongful act," which covers *"any* … alleged act, error, omission, misstatement, misleading statement, neglect, [or] breach of duty" by an insured entity or individual. (Emphasis added.) The estate's allegations that Du-Kane Asphalt reduced Jane's shares without consideration and without her knowledge and consent fit comfortably within this definition.

That the complaint is styled as a request for a declaratory judgment makes no difference. The reporting obligation does not depend on the specific remedies that the plaintiff requests in the underlying litigation. Nor is it relevant whether the suit could have led to a compensable loss. The policy's reporting requirement kicks in when an insured receives notice of a claim against it, including the filing of a civil action alleging any wrongful act. The estate's original complaint clearly fits the bill under the policy's broad definitions of the terms "claim" and "wrongful act," and that complaint triggered a reporting duty under the 2017 policy.

## B. The Second Amended Complaint Was Not a Claim First Made in 2018

The insureds next argue that the estate's second amended complaint created a distinct claim first made during the 2018 policy period because it contained new allegations and added Crush-Crete and the Dunteman brothers as defendants for the first time. We'll examine the effect of the new allegations and defendants separately. The analysis for each is slightly different but leads to the same result: under the policy's broad aggregation provisions, the new allegations against additional defendants clearly related to the claim that was first made during the 2017 policy period.

### 1. *New Allegations*

The second amended complaint added new allegations of oppressive behavior both before and after Jane's death, as well as associated theories of relief. But the estate's original complaint was a reportable claim first made during the 2017 policy period. Under the policy's aggregation provisions, the broadened allegations in the amended pleading are related to and thus are treated as part of that claim.

To repeat, the policy treats "related wrongful acts" as a "single wrongful act." And it broadly defines "related wrongful acts" as acts that are "logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event, result, injury or decision." At the very least, the allegations in the original and second amended complaints are "logically … connected" because they collectively concern the insureds' wrongful reduction of Jane's ownership interest in the family business. Under the

policy's aggregation provisions, the "claim" encompassed the estate's initial allegations and subsequent elaborations.

This conclusion follows from the plain policy language but is also informed by the fact that the 2017 claim took the form of a "[c]ivil proceeding commenced by the service of a complaint." Amendments to a complaint, of course, do not commence a new action. *Mkt. St. Bancshares*, 962 F.3d at 954 ("[A] complaint commences an action as a whole, not just part of one."). And more fundamentally, a civil proceeding encompasses far more than just the allegations and theories contained in a first pleading.

Our decision in *Market Street Bancshares* is instructive here. That case involved a claims-made policy with language that closely mirrors the Hanover contract. The policy provided coverage for a three-year period from April 2014 to April 2017, but the underlying litigation began more than a decade earlier. *Id.* at 950–51. The insured nevertheless sought coverage under the 2014–2017 policy based on a theory of recovery that was raised for the first time in the damages phase of the litigation. *Id.* at 951. We held that the new damages theory was not a new claim but instead was related to—and thus was part of—the claim that was first made long before the policy period began. *Id.* at 953. We explained: "[A] 'claim' taking the form of 'a civil proceeding commenced by the service of a complaint' spans the entire civil action, not just the legal theories and factual allegations in the complaint that commenced the action." *Id.* So too here. The estate's new allegations in the same action built on the claim it first made during the 2017 policy period.

The chronology in the underlying litigation here drives the point home. The discovery process apparently revealed

evidence that prompted the estate to elaborate on its allegations of wrongdoing and add theories of relief. The reporting requirement would be meaningless if this routine occurrence in litigation could excuse the insured's failure to report the original complaint to the insurer during the policy period in which it was filed.

Our conclusion flows from a straightforward application of the policy language, but we note as well that accepting the insureds' argument would undermine the purpose and ordinary operation of claims-made insurance. It bears repeating that this type of insurance "is geared toward easy identification of the insurer's risk exposure." *Id.* at 954. The insurer gets predictable risk exposure, and the insured pays a lower premium as a result. *Id.* at 952. The insured's failure to report a claim in the same policy period in which it was first made makes the insurer's "risk exposure … significantly more difficult to calculate." *Id.* at 955. In short, the insureds can't have it both ways by reaping the benefits of claims-made insurance without complying with their corresponding policy obligations.

### 2. *New Codefendants*

Crush-Crete and the Dunteman brothers object that the estate's original complaint could not have commenced a claim against them during the 2017 policy period because they were new to the litigation in 2018. Their point has some surface appeal. *See Cmty. Found. for Jewish Educ. v. Fed. Ins. Co.*, 16 F. App'x 462, 467 (7th Cir. 2001) ("If the insured is brought into the litigation for the first time through the amended complaint, the claim is obviously new to that entity; thus it is a claim first made."). Had the original complaint named an unaffiliated defendant or raised unre-

lated wrongful acts, Hanover's position would be on shakier ground. But Du-Kane Asphalt, Crush-Crete, and the Dunteman brothers were coinsureds under the same D&O policy (with R.W. Dunteman Company), and the policy's aggregation provisions tie the allegations in the second amended complaint to the claim raised earlier in the estate's original complaint against Du-Kane Asphalt.

Indeed, the policy defines "Related Claims" even more broadly than "Related Wrongful Acts." The former encompasses "all Claims based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damage or events or the same series of facts, circumstances, situations, transactions, results, damage or events." And "Related Claims," as we've noted, are treated as "a single Claim made in the Policy Period … in which the earliest of such Related Claims was first made or first deemed to have been made." Moreover, "[a]ll Related Claims are subject to the … terms and conditions applicable to the earliest Related Claim." Simply put, all related claims arising from the common series of events surrounding the dispute over Jane's share of the family business are considered "first made" in 2017 and subject to the 2017 policy's reporting obligation.

Just as the estate's original and amended complaints concern related wrongful acts, the new theories of relief brought against Crush-Crete and the Dunteman brothers are "based upon" or at least "related to" the common scheme to diminish Jane's minority stake in the family companies.[5] Here

---

[5] The Dunteman brothers maintain that we cannot assess relatedness here without giving credence to the estate's allegations of a broad conspiracy to target Jane and now her estate. Not so. To say that the

again, this conclusion follows from a straightforward appli-cation of the policy's aggregation provisions, but it also comports with the distribution of risk inherent in claims-made insurance. The purpose of the reporting requirement would be seriously undermined if later iterations of the complaint based on facts learned during discovery could excuse the insured's failure to timely notify the insurer of the lawsuit when it was first filed.

### III. Conclusion

The estate's original complaint commenced a reportable claim under the 2017 policy. The second amended complaint did not create a new claim first made during the 2018 policy period. The insureds' notice to Hanover was therefore untimely, and the insurer was justified in denying coverage.

AFFIRMED

---

allegations here meet the policy's aggregation requirements has nothing to do with whether the estate's allegations are true. *See Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 326 n.4 (7th Cir. 2021) (explaining that in a coverage dispute, "[w]e do not opine on the merits of the facts alleged").

HAMILTON, *Circuit Judge*, concurring. This case tends to confirm an *almost* tongue-in-cheek definition of directors and officers liability insurance: "Paying a premium now for the right to sue your insurance carrier later." Mark Herrmann, The Curmudgeon's Guide to Practicing Law 54 (ABA Publishing 2006).

I join Chief Judge Sykes' opinion, being persuaded that it correctly applies the insurance policy's broad definitions of "claims," "related wrongful acts," and "related claims." I write to highlight three practical implications.

First, this decision creates a powerful incentive for any company with a claims-made D&O policy to give the insurer notice of even the most minor claims, including those against only the company. As this case shows, an initial claim that looks minor and manageable can sometimes morph into a monstrous threat not only to the company but also to individual directors and officers personally. If that happens, failure to give notice of the original minor claim against only the company will leave the insureds without defense or coverage for the larger threat that emerges later.

The original declaratory judgment action filed by the estate of Jane Dunteman in August 2017 was quite narrow. It sought relief against only the company, Du-Kane Asphalt. And rather than seeking damages, the estate sought only a declaration as to whether, at the time of her death, Jane Dunteman had owned 24% of Du-Kane Asphalt or just 10%. But a year later, when the estate moved for leave to file its second amended complaint, the scope of the lawsuit expanded by at least an order of magnitude. The amended complaint added individual defendants, and it added allegations of many new and serious wrongful acts separated from the

original stock-ownership events by many years. Since the insurer and this court are treating all of those additions as related to the original stock-ownership claim, the insured company's incentive to flood the D&O insurer with notice of even seemingly minor claims (even well within a policy deductible) becomes powerful indeed.

Second, and closely related, the pattern in this case will give outside directors incentives to pressure management to make sure the company gives notice of such minor claims asserted against only the company. D&O insurance coverage can be a valuable benefit for those who serve as directors. Under the approach we endorse here, however, directors can lose coverage for their personal defense and personal liability if, through no involvement or fault of the directors, the company fails to give the insurer timely notice of a minor claim against only the company. If that minor claim later morphs into the larger threat, it may then be too late to give notice to invoke D&O coverage.

Third, the reasoning of this decision cuts both ways. Suppose an insured like Du-Kane Asphalt does provide timely notice of something like the original, rather minor claim in the estate's original complaint for a declaratory judgment. Under our reasoning, that notice may trigger coverage for the much larger, more extensive, and more complex "related claims." That coverage would apply to the new claims adding new defendants and arising from events that occurred years later, and it would apply even if the new claims were added to a pending lawsuit long after the policy period for the claims-made policy. We cannot know whether the insurer here, if it had been given timely notice of the original declaratory judgment action, would actually have embraced that consequence

of such broad coverage. The direction of the insurer's logic, however, is clear.